# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ORANGEBURG DIVISION

| United States of America, | ) | |
|---|---|---|
| | ) | |
| | ) | Criminal No.: 5:12-cr-00810-JMC-2 |
| v. | ) | |
| | ) | |
| | ) | **ORDER AND OPINION** |
| Troy Kentrell Whaley, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Defendant Troy Kentrell Whaley is a prisoner currently serving a sentence of two hundred and forty (240) months in the Bureau of Prisons ("BOP"). (*See* ECF No. 229.)

This matter is before the court pursuant to Whaley's Motion for Compassionate Release. (ECF No. 325.) For the reasons set forth below, the court **DENIES** Whaley's Motion for Compassionate Release. (*Id.*)

## I. RELEVANT BACKGROUND

On April 16, 2013, the Grand Jury charged Troy Kentrell Whaley and two (2) co-Defendants in an eleven (11) count Superseding Indictment for his involvement in an illicit narcotic distribution scheme in Orangeburg, South Carolina. (*See* ECF No. 66.) On September 12, 2013, Whaley signed a written Plea Agreement agreeing to plead guilty to conspiracy to distribute five (5) kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. (ECF No. 162 at 1.) On September 24, 2013, the court accepted Whaley's guilty plea (ECF No. 168 at 1), and on February 20, 2014, the court sentenced Whaley to a term of imprisonment of two hundred and forty (240) months (ECF No. 229 at 2). Whaley has received

credit for time served since February 12, 2013, and is currently serving his term of imprisonment at Petersburg Low Federal Correction Institution ("FCI Petersburg Low"). (ECF No. 266 at 1.)

On March 11, 2020, approximately eighty-four (84) months after Whaley began serving his term of imprisonment, the World Health Organization ("WHO") characterized the outbreak of coronavirus 2 (SARS-CoV-2) as a global pandemic, *WHO Director-General's Opening Remarks at the Media Briefing on COVID-19*, https://www.who.int/director-general/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020 (last visited June 30, 2021), and on March 13, 2020, the President officially declared a national emergency over concern for the virus, *COVID-19 Emergency Declaration*, https://www.fema.gov/press-release/20210318/covid-19-emergency-declaration (last visited June 30, 2021).

As of June 30, 2021, there are approximately 33.6 million reported cases in the United States, representing 18.5% of reported cases worldwide. *Coronavirus Resource Center Global Map*, https://coronavirus.jhu.edu/map.html (last visited June 30, 2021). The United States has faced approximately 604,476 deaths as a result of the virus to date (15.3% of worldwide deaths attributed to COVID-19). *Id*. As of June 30, 2021, "[t]here are 50 federal inmates and 133 BOP staff who have confirmed positive test results for COVID-19 nationwide." *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last visited June 30, 2021) (data found under the subsection "COVID-19 Cases").

On February 19, 2021, Whaley filed the instant *pro se* Motion for Compassionate Release dated February 4, 2021, stating that "there have been over 60 positive cases in the past three weeks" and that Whaley's "housing unit is nothing short of a breeding ground for infections" due to the inability to social distance and apparent lack of medical treatment or care for inmates who test positive for or become sick from COVID-19. (ECF No. 325 at 1–3.) Whaley cites to a news

article (attached to his Motion) that highlighted the death of an inmate due to COVID-19 in September 2020 who was housed at FCI Petersburg Medium and alleges "[m]y chances of getting sick and dying in prison are very high." (*Id*. at 3–4.) Whaley, a forty-three (43) year-old Black male, does not assert any personal health concerns in his Motion, except that "[t]he Centers for Disease Control and Prevention (CDC) said that Blacks are <u>five times</u> more likely than [W]hites to be hospitalized or die from getting COVID-19." (*Id*. at 1.) Whaley does not express whether he pursued administrative remedies within the BOP prior to filing his Motion.

On March 10, 2021, the Government filed its Response to Defendant's Motion to Reduce Sentence asserting it opposed Whaley's request to this court for his "failure to exhaust administrative remedies," and the court should deny Whaley's Motion without prejudice. (*See* ECF No. 326 at 1.)

## II. LEGAL STANDARD

With limited exceptions, the court may not modify a sentence once it has been imposed. 18 U.S.C. § 3582(c). One exception is the doctrine of compassionate release, which permits the court to reduce a sentence in extraordinary circumstances. "As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify a criminal defendant's sentence for 'extraordinary and compelling reasons' 'upon motion of the Director of the Bureau of Prisons' or 'upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.'" *United States v. Feiling*, 453 F. Supp. 3d 832, 837 (E.D. Va. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)(i)).

"By its plain language, § 3582(c)(1)(A) requires defendants to first exhaust administrative remedies or wait thirty days after requesting that the warden of their facility file a motion for a sentence reduction; however, courts have waived this requirement when enforcing it would prove futile." *Id*. The court may grant a motion for compassionate release and reduce a defendant's sentence if the "court . . . finds that . . . extraordinary and compelling reasons warrant such a reduction[,]" the reduction is "consistent with applicable policy statements issued by the Sentencing Commission[,]" and the § 3553(a) sentencing factors merit a reduction.[1] *See United States v. McCoy*, 981 F.3d 271, 275 (4th Cir. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)).

## III. ANALYSIS

Whaley moves this court to grant him compassionate release from prison due to the COVID-19 pandemic. Upon its review, the court observes that Whaley has failed to exhaust his administrative remedies through the BOP and his present circumstances would otherwise not merit his compassionate release.

Whaley has neither asserted nor provided any evidence that he has pursued relief through BOP's administrative processes, and the Government unequivocally raises Whaley's failure to do so in its opposition to Whaley's Motion. (ECF No. 326 at 10.) The Government further asserts that the restriction placed on the courts by § 3582(c) is a mandatory claim-processing rule,[2] which

---

[1] The § 3553(a) factors include: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed; the kinds of sentences available; the sentencing range as set forth in the Sentencing Guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the underlying offense. 18 U.S.C. § 3553(a).
[2] The Fourth Circuit has not decided whether § 3582(c)(1)(A)'s exhaustion requirement is jurisdictional, but the weight of related Supreme Court precedent (discussing other statutes) and other circuit rulings (assessing § 3582(c)(1)(A) directly) suggests that it is not jurisdictional but a mandatory claim-processing rule. *See Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1849 (2019); *e.g.*, *United States v. Alam*, 960 F.3d 831 (6th Cir. 2020); *United States v. Harris*, 989 F.3d 908

4

"must be enforced if a party 'properly raise[s]' it." (ECF No. 326 at 12 (citing to *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843 (2019)).) The court agrees with the Government that while Congress intended the First Step Act to expand the availability of compassionate release, it also "expressly imposed on inmates the requirement of initial resort to administrative remedies." (ECF No. 326 at 14.) "Congress . . . intended to provide a district court with jurisdiction to reduce a sentence without agency action *only if* the agency fails to act within 30 days." *United States v. White*, No. 18-061, 2020 WL 3442171, at *2 (E.D. Va. June 23, 2020). While Congress has also acted in direct response to the pandemic, it broadened *only* the power of the BOP by allowing their discretion to place those "inmates whom [the Bureau] deem[s] suitable candidates" in home confinement.[3] *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19*, Office of the Attorney General (Apr. 3, 2020), https://www.justice.gov/file/1266661/download (last visited June 30, 2021); *see also* CARES Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281 (2020). Accordingly, Whaley's failure to exhaust administrative remedies, and assert that he had indeed done so, informs the court's decision to deny his Motion for Compassionate Release.

Although some courts have waived administrative exhaustion for COVID-19 related compassionate release motions, "absent exceptional circumstances, courts have been reluctant to grant waivers of the exhaustion requirement simply because COVID-19 threatens an inmate's health." *United States v. Feiling*, 453 F. Supp. 3d 832, 837 (E.D. Va. 2020). Whaley's instant

---

(11th Cir. 2021); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (characterizing the statute's exhaustion requirement as a "glaring roadblock foreclosing compassionate release"). Claim-processing rules require "that the parties take certain procedural steps at certain specified times." *Fort Bend Cnty.*, 139 S. Ct. at 1849. They "may be 'mandatory' in the sense that a court must enforce the rule if a party properly raises it." *Id*.

[3] The Attorney General directed the BOP Director to review all inmates who have COVID-19 risk factors–as established by the CDC–starting with the inmates incarcerated at facilities that COVID-19 was materially and operationally affecting. *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19*, Office of the Attorney General (Apr. 3 2020).

5

request proves distinguishable from those cases that granted waiver. For example, in *United States v. Powell*, the court held that exhausting administrative remedies would be futile for a defendant who had only three (3) months left on a 262-month sentence and suffered from several respiratory problems. No. 94-316, 2020 WL 1698194, at *1 (D.D.C. Mar. 28, 2020).[4] In another case, the court found that waiving the exhaustion requirement was warranted for a defendant who had only twenty-three (23) days remaining on his sentence and was undisputedly in fragile health–despite the government's expressed reluctance that the court go against the exhaustion requirement set forth in § 3582(c)(1)(A). *United States v. Perez*, 451 F. Supp. 3d 288, 292–293 (S.D.N.Y. 2020) (holding that "administrative exhaustion would defeat, not further, the policies underlying 3582(c)."). In both cases, the courts waived the exhaustion requirement due to the brief length of time remaining on the defendants' sentences *and* because each defendant had extraordinary and compelling reasons warranting their release. On the other hand, the court considers that Whaley's two hundred and forty (240) month sentence began on February 12, 2013, a little over twelve (12) months before he was officially sentenced. (ECF No. 266 at 1.) According to the BOP, Whaley is presently scheduled to be released on or around February 27, 2030. *See Inmate Locator*, https://www.bop.gov/inmateloc/ (last visited June 30, 2021) (search by BOP Register Number 25022-171). Whaley has served just under fifty (50) percent of his sentence to date, which provides Whaley ample time to exhaust BOP's administrative remedial process without undermining equitable relief. Therefore, he presents insufficient grounds to waive the exhaustion requirement.

Because Whaley has not been able to demonstrate his exhaustion of administrative remedies under § 3582(c)(1)(A) or justify its waiver, the court lacks authority to grant a sentence

---

[4] The Government did not oppose the defendant's motion. *Powell*, 2020 WL 1698194, at *1.

modification under that provision. Nonetheless, even if the court had such authority, Whaley fails to present extraordinary and compelling reasons for his requested relief. "In the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *Feiling*, 453 F. Supp. 3d at 841. "Notably, 'the *fear* of contracting a communicable disease' proves insufficient to justify a sentence modification." *Id*. (quoting *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020)).

Whaley has neither a particularized susceptibility to the disease nor a particularized risk of contracting the disease at his prison facility. In his Motion, Whaley only cites to a generalized concern that Black individuals have a significantly higher likelihood of contracting COVID-19 than White individuals. While such a health disparity is a troubling realization arising from growing research about the novel coronavirus,[5] and should by no means be understated, its threat and Whaley's potential vulnerability to COVID-19 as a Black male do not provide the court the requisite extraordinary and compelling circumstances necessary to grant his release. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify

---

[5] The CDC currently reports that, compared with White, non-Hispanic persons, Black or African American non-Hispanic persons have a 1.1 times greater risk for contracting COVID-19, 2.9 times greater risk of being hospitalized due to COVID-19, and 2.0 times greater risk of dying from COVID-19. *Risk for COVID-19 Infection, Hospitalization, and Death by Race/Ethnicity*, https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-race-ethnicity.html (last visited June 30, 2021). Earlier statistics from the CDC report that "Blacks and Hispanics [were] over 4.6 times more likely to be hospitalized for COVID than Whites." Melanie Blackman, *Blacks and Hispanics Test Positive for COVID Over Three Times More than Whites*, HealthLeaders (Nov. 3, 2020), https://www.healthleadersmedia.com/covid-19/blacks-and-hispanics-test-positive-covid-over-three-times-more-whites (last visited June 30, 2021).

compassionate release, especially considering the BOP's statutory role, and its extensive professional efforts to curtail the virus's spread."). Moreover, Whaley previously reported that he was in good physical, mental, and emotional health and did not require the care of a physician or any prescribed medication (ECF No. 224 at 20 ¶¶ 85–86), and he does not allege any personal ailments or adverse health conditions in his Motion to signal to the court that his health status has since declined. Thereby, the court finds nothing in Whaley's record that indicates any personal susceptibility to the virus other than his race.

In addition, Whaley does not have a particularized risk of contracting COVID-19 where he is presently located because there are currently no pending test results among inmates, no positive test results among inmates, and no positive test results among the BOP staff at FCI Petersburg Low. *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last visited June 30, 2021). There have also been no reported deaths from COVID-19 at FCI Petersburg Low, *id.*, which houses approximately 649 total inmates across its main facility and satellite camp. *FCI Petersburg Low*, https://www.bop.gov/locations/institutions/pet/ (last visited June 30, 2021). To date, FCC Petersburg, which includes FCI Petersburg Low and Medium facilities, has fully inoculated 1,925 inmates as part of BOP's vaccine implementation operation, accounting for approximately eighty-nine (89) percent of FCC Petersburg's prison population.[6] *Id.* (Under "COVID-19 Vaccine Implementation"). The court hopes that either Whaley has received the vaccine or he will choose to receive the vaccine in the near future as the BOP continues to progress its vaccination program.[7]

---

[6] The present data does not indicate what percentage of fully inoculated inmates are located in FCI Petersburg Low.

[7] "By mid-May, [the BOP] anticipate[s] that all inmates will have been provided the opportunity to be vaccinated." *Oversight of the Federal Bureau of Prisons*, S. Comm. on the Judiciary, 117th Cong. 2 (2021) (statement of Michael D. Carvajal, Director, Federal Bureau of Prisons), https://www.bop.gov/resources/news/ pdfs/statement_20210415.pdf (last visited June 30, 2021).

Since Whaley cannot demonstrate exhaustion of his administrative remedies or "extraordinary and compelling reasons" for his release, the court **DENIES** his Motion for Compassionate Release. (ECF No. 325.)

## IV. CONCLUSION

After a thorough review, the court **DENIES** Troy Kentrell Whaley's Motion for Compassionate Release. (ECF No. 325.)

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

June 30, 2021
Columbia, South Carolina